**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WESLEY B. VANDERLAN, M.D.,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 25-00156-B** |
| | * | |
| **JENNIFER NEWTON,** | * | |
| | * | |
| **Defendant.** | * | |

**ORDER**

This action is before the Court on Defendant Jennifer Newton's ("Newton") Motion to Dismiss. (Doc. 14). The motion has been briefed and is ripe for disposition. (Docs. 21, 22). Upon consideration of the parties' briefs, Newton's motion is **GRANTED** and Plaintiff Wesley B. Vanderlan's Second Amended Complaint (Doc. 8) is **DISMISSED without prejudice**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Wesley B. Vanderlan (hereinafter "Plaintiff" or "Vanderlan") is a surgeon and a resident citizen of Florida who is licensed to practice medicine in Alabama and other states. (Doc. 8 at 2-3; Doc. 21 at 2). Newton is a university professor and is a resident citizen of Ohio. (Doc. 8 at 1-2). On December 6, 2024, Vanderlan and Newton were seated next to one another on Delta Air Lines Flight 409 traveling nonstop from New Orleans, Louisiana, to Atlanta, Georgia. (Doc. 8 at 3; Doc. 14 at 27). Vanderlan was seated in the aisle seat and Newton was in the middle seat. (Doc.

8 at. 3-4; Doc. 14 at 28). According to Vanderlan, although he is not an expert in aeronautics, he can confirm that the flight path of Flight 409 "covered Mobile County." (Doc. 8 at 7). Vanderlan talked on his cell phone prior to the flight taking off, but he was exhausted and slept during the entire flight after ending his calls.[1] (Id. at 3-4, 6, Exh. "E"). Thus, he had no recollection of any contact between him and Newton during the entire flight. (Id. at 6). Newton contends that although Vanderlan's eyes remained closed during the flight, he made several unwanted physical contacts with her and that, in response, she pushed Vanderlan's "hands, arms, legs, and head" off her multiple times and told him to stop touching her. (Doc. 14 at 28-29). According to Newton, a female passenger in the window seat next to her informed her that she was a retired FBI agent, and that she had video recorded Vanderlan's behavior. (Doc. 14 at 29).

Newton did not report Vanderlan or his alleged misconduct to the crew of Flight 409. (Id. at 29). However, at some point *after* the flight arrived in Atlanta, Newton later made an online complaint to Delta Air Lines, which in turn revoked Vanderlan's

[1] Vanderlan asserts that during his cell phone calls, he discussed politics, including his support for some of President Donald Trump's policies. (Doc. 8 at 3-4).

flight privileges with the airline.[2] (Doc. 8 at 7; Doc. 14 at 30). Once back in Ohio, Newton also shared the video taken by the retired FBI agent and Newton's version of her encounter with Vanderlan with Michael McWhorter in an effort to learn Vanderlan's identity. (Doc. 14 at 30). According to Newton, McWhorter is a television and motion picture writer, director, editor, and producer who lives in Florida. (Id.). According to Vanderlan, McWhorter, a liberal activist with over six million followers, published Newton's story and the alleged videorecording with an aggressive, defamatory narrative. (Doc. 8 at 8). Thousands of McWhorter's followers tracked Vanderlan down and harassed him, his family, and his employers, and demanded that Vanderlan's hospital privileges be terminated. (Id.; Doc. 8-8, Exh. "F."). Vanderlan also asserts that Newton reported the incident to the FBI and that he has become the subject of an FBI investigation as a result, and that Newton hired an attorney to demand $500,000 from Vanderlan based on her fabricated and exaggerated claims. (Doc. 8 at 7).

Vanderlan filed the instant action against Newton alleging defamation, intentional tortious interference with business relations, and battery.[3] (Id. at 9-12). Vanderlan contends he

---

[2] Newton contends that she did not complain during the flight because she feared the situation could become confrontational or violent. (Doc. 14 at 29).

[3] On April 14, 2025, and then on April 19, 2025, Vanderlan filed the first two versions of his complaint, respectively, seeking

suffered the loss of significant professional contracts, reputational damage, and financial harm exceeding hundreds of thousands of dollars. (Id. at 9). Currently pending before the Court is Newton's motion and supporting declaration seeking dismissal of Vanderlan's operative complaint on the grounds of lack of personal jurisdiction, improper venue, and failure to state a claim. (Doc. 14). See Fed. R. Civ. P. 12(b)(2), 12(b)(3), 12(b)(6). Specifically, Newton contends that this Court lacks personal jurisdiction over her, such that the Court is precluded from adjudicating Vanderlan's claims. Newton argues that this Court lacks general and specific jurisdiction over her because she has never been to Alabama and has no contacts with the state. (Doc. 14 at 5-13, 27). She further contends that the Southern District of Alabama is the wrong venue for this action because she does not reside in this district and the allegedly false and defamatory communications on which Vanderlan bases his claims did not occur until significantly *after* Flight 409 had landed in Atlanta. (Doc. 14 at 13). Additionally, Newton contends that in the unlikely event

---

damages for defamation, tortious interference with business relations, and battery. (Doc. 1; Doc. 3). Both complaints named the following parties as defendants: Newton; John Does One; John Doe Two; and John Doe 1-10000. (Doc. 1 at 1; Doc. 3 at 1). Following this Court's order instructing Vanderlan to show cause why the fictitious defendants should not be stricken (Doc. 5), Vanderlan filed his second amended complaint naming Newton as the sole Defendant. (Doc. 8). It is the operative pleading.

the Court does not find that dismissal is appropriate, the case should be transferred pursuant to 28 U.S.C. § 1404(a) to a more convenient forum as none of the parties nor witnesses reside in Alabama. (Doc. 14 at 14). Finally, Newton argues that Vanderlan's claims should be dismissed because he has failed to state a claim against her. (Doc. 14 at 14-24).

Vanderlan filed a response in opposition along with supporting exhibits. (Docs. 21, 22). In his response, Vanderlan contends that venue is proper in this District "because the events giving rise to [his] claims are reasonably believed to have occurred in the airspace over the Southern District of Alabama." (Doc. 8 at 2). He further alleges that "any contact described by Newton allegedly occurred when the aircraft was in the airspace over Mobile County, Alabama." (Id. at 7). Vanderlan also contends that Newton availed herself of the privilege of conducting business in Alabama by threatening to sue a doctor with an Alabama license for conduct she admits occurred in Alabama, and that through her agents, she orchestrated an "incredible almost terrorist like pattern of contact" with Vanderlan's employers in Alabama causing him to lose two jobs in the state. (Doc. 21 at 12).

Vanderlan further claims that the defamatory campaign originated with statements made during the flight traveling through Alabama airspace and was designed to injure Vanderlan's reputation where he is licensed and known professionally. (Doc. 21

at 13). Thus, the brunt of the harm was suffered in Alabama. (Id.). Vanderlan also alleges that Newton's presuit demand for $500,000 further evidences that litigation was foreseeable, and her decision to enlist McWhorter, a high-reach online influencer, to republish the allegations using "edited" videos demonstrates purposeful direction and minimum contacts consistent with due process. (Id.). Additionally, Vanderlan claims that over a period of many months, Newton, acting directly and through multiple law firms, engaged in continuous communications and negotiations with Plaintiff and his counsel in Alabama. (Id.).

Vanderlan further argues that if the Court finds that personal jurisdiction is lacking, he should be permitted to conduct discovery to develop facts sufficient to support a determination on the issue of jurisdiction and he attaches proposed discovery requests to his response as an exhibit. (Doc. 21 at 18-19; Doc. 22-4, Exh. "E"). According to Vanderlan, he should be able to explore Newton's contact with McWhorter and determine what she asked him to do "other than obviously [dox] [Vanderlan] for her to sue." (Doc. 21 at 18-20). Finally, Vanderlan argues that he has plead facts sufficient to state a claim against Newton, and argues that if the Court determines venue to be improper, that this action should be transferred to another venue instead of dismissed. (Doc. 21 at 19-22).

## II. STANDARD OF REVIEW

The Court must determine, as a threshold matter, whether it has personal jurisdiction over Newton. "As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims. A defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings." Republic of Pan. v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997) (citations omitted). Accordingly, the Court begins with the question of personal jurisdiction.

The issue of whether a court has personal jurisdiction over a defendant is a question of law. Diamond Crystal Brands, Inc. v. Food Movers Int'l., 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted). Rule 12 of the Federal Rules of Civil Procedure allows a party to assert the defense of lack of personal jurisdiction by motion. Fed. R. Civ. P. 12(b)(2). A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient material facts to make out a prima facie case of jurisdiction. United Tech. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted); see also Hard Candy, LLC v. Hard Candy Fitness, LLC, 106 F. Supp. 3d 1231, 1238 (S.D. Fla. May 13, 2015). "Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally

shifts back to the plaintiff to produce evidence supporting jurisdiction.'" Mazer, 556 F.3d at 1274 (citations and internal quotation marks omitted). "A prima facie case is established if the plaintiff presents affidavits or deposition testimony sufficient to defeat a motion for judgment as a matter of law." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 810 (11th Cir. 2010) (citation omitted); Am. Home Assur. Co. v. Weaver Aggregate Transp. Inc., 719 F. Supp. 2d 1333, 1334 (M.D. Ala. 2020) ("In other words, the plaintiff cannot respond by merely relying on the jurisdictional allegations in [his] complaint but must substantiate those allegations by affidavit or other component proof." (citation omitted)).

The district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits. Cable/Home Commun. Corp. v. Network Prods., 902 F.2d 829, 855 (11th Cir. 1990) (citations omitted). Where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff. PVC Windoors, 598 F.3d at 810 (citation omitted). If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists. PVC Windoors, 598 F.3d at 810 (footnote omitted); see also Hard Candy, 106 F. Supp. 3d at 1238 ("In assessing the evidence,

the court must construe all reasonable inferences in favor of the plaintiff." (citation and internal quotation marks omitted)). Notwithstanding the burden-shifting framework identified herein, "[i]t goes without saying that, where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." Oldfield v. Pueblo de Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th Cir. 2009) (citation omitted).

"A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002) (citations omitted); see also Daimler AG v. Bauman, 571 U.S. 117, 125 (2014) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). A district court may exercise personal jurisdiction over a defendant when two conditions are met. First, jurisdiction must be proper under the forum state's long-arm statute. Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007). Second, exercising jurisdiction must not violate the defendant's rights under the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have sufficient "minimum contacts" with the forum state so as not to offend "traditional notions of fair play and substantial justice." Id.

(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible."[4] Sloss, 488 F.3d at 925. Thus, the Court need only consider the limits of the Due Process Clause, and whether Alabama's exercise of jurisdiction over Newton violates due process. See Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004).

There are two types of personal jurisdiction: "general" and "specific." Facts supporting personal jurisdiction "may be general, which arise from the party's contacts with the forum state that are unrelated to the claim." Cont'l Motors, Inc. v. Jewell Aircraft, Inc., 882 F. Supp. 2d 1296, 1307 (S.D. Ala. 2012) (citation omitted). General jurisdiction refers "to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose" because the defendant is at home in the forum. Oldfield, 558 F.3d at 1220,

---

[4] Alabama's long arm statute provides, in part:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States . . . .

Ala. R. Civ. P. 4.2(b) (effective Aug. 1, 2004).

n.27 (citations omitted). Here, Vanderlan has asserted no facts which suggest that general jurisdiction exists over Newton in Alabama. Instead, he asserts that this Court has specific jurisdiction. (Doc. 21 at 8, 11).

"Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." Madara v. Hall, 916 F.2d 1510, 1516 (11th Cir. 1990) (citations omitted). The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on "the relationship among the defendant, the forum, and the litigation." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum state. Walden v. Fiore, 571 U.S. 277, 284 (2014). The contacts with the forum state must also be purposeful and created by the "defendant *himself*." Id. (emphasis in original). Due process requires that a defendant be subjected to specific jurisdiction of a state "based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985));

see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980) ("the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there").

However, specific jurisdiction does not require a high number of contacts with the forum state, as even a single purposeful contact may give rise to personal jurisdiction. Licciardello v. Lovelady, 544 F.3d 1280, 1285 (11th Cir. 2008) (so long as a nonresident defendant's purposeful conduct creates a "substantial connection" with the forum, "even a single act can support jurisdiction" (quoting Burger King, 471 U.S. at 475 n.18)). When the plaintiff alleges an intentional tort, personal jurisdiction may be proper even though the nonresident defendant has no other contacts with the forum. Licciardello, 544 F.3d at 1285; Calder v. Jones, 465 U.S. 783, 789-91 (1984). Indeed, the Eleventh Circuit has employed the "effects" test utilized in Calder to determine whether a nonresident defendant had the requisite minimum contacts with a forum state for purposes of exercising personal jurisdiction by examining the following: Whether the defendant (1) committed an intentional tort (2) aimed at the forum state (3) that "caused harm that the defendant should have anticipated would be suffered in the forum state." Licciardello, 544 F.3d at 1285-86; see, e.g., Oldfield, 558 F.3d at 1220 n.28; Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013); Cecil v. Moore, 109

F.4th 1352, 1362-66 (11th Cir. 2024) (adopting analyses of sister circuits applying Calder to "social media and internet-based activities" in defamation action).

The Supreme Court has built on its decision in Calder by emphasizing that the "effects" of a defendant's intentional conduct must connect the defendant to the forum, not just to a plaintiff who lives or works there. See Walden, 571 U.S. at 286-89; Cecil, 109 F.4th at 1363 ("in determining whether the allegedly defamatory comments or information was directly aimed at the forum, the court must look to the defendant's focus, purpose, and/or intent in posting the information"). As such, "mere injury to a forum resident is not a sufficient connection to the forum." Walden, 571 U.S. at 290; Cecil, 109 F.4th at 1363-64 ("Mere knowledge that the effects of the defendant's conduct would be felt in the forum state, without more, is insufficient."). The Walden Court explained that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 571 U.S. at 290; Cecil, 109 F.4th at 1363 ("[W]here there is no evidence that the defendant posted the allegedly defamatory information hoping to reach the forum state or an audience in the forum state specifically, then the [Calder] effects test is not satisfied." (quotations omitted)). Indeed, regardless of "where a plaintiff lives or works," the defendant's conduct "must form the

necessary connection with the forum State that is the basis for its jurisdiction over him." Walden, 571 U.S. at 285 (quotations omitted), 290; Cecil, 109 F.4th at 1364 ("[W]here the out-of-state defendant deliberately directs his posting at the plaintiff or at an audience in the forum state, then the 'directly aimed at the forum prong' of the [Calder] effects test is satisfied." (quotations omitted)). Therefore, while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." Walden, 571 U.S. at 286 (quotation omitted); see, e.g., Cecil, 109 F.4th at 1364 ("simply because the tweets . . . implicated [plaintiff] and [plaintiff] suffered harm in Alabama is not enough to establish personal jurisdiction" over nonresident defendant in forum state of Alabama).

## III. DISCUSSION

The Court finds Newton does not have such minimum contacts with Alabama as to be subject to personal jurisdiction. Vanderlan, who is a Florida citizen, has failed to allege facts that suggest Newton's alleged acts were aimed at Alabama or that she should have anticipated that harm would be suffered in Alabama. The evidence is undisputed that Newton is a citizen of Ohio and that she has never traveled to Alabama, despite flying over Alabama

airspace en route to another destination. (Doc. 14 at 27). Vanderlan bases his battery claim on Newton's assertions that during the flight, she had to repeatedly move Vanderlan's hands and head off of her body. Given that Vanderlan claims to have been asleep during the entire flight, it is difficult to conceive how Newton's act of moving Vanderlan's hands and head off of her body would constitute an offensive touching, but even if it could, there is nothing before the Court suggesting said conduct was somehow aimed at Alabama as the parties concede the encounter between Vanderlan and Newton took place somewhere in the airspace over four different states during the flight from New Orleans to Atlanta. (Doc. 14 at 27; Doc. 21 at 21-22).

Further, there is no assertion that Newton reported Vanderlan's alleged conduct to officials in Alabama or that Newton took any action directed toward Alabama. The record is devoid of any facts suggesting that, as a result of the alleged battery, Newton caused harm that she should have anticipated would be suffered in Alabama. Indeed, as noted in Newton's brief, she did not exercise any control over which states' airspace Flight 409 would travel. (Doc. 14 at 11 ("Newton did not deliberately choose to be routed over the State of Alabama; she was only concerned with being transported from New Orleans to her home state of Ohio.")). And, the fact that Vanderlan himself has arguable contacts with the state of Alabama does not provide a basis for

exercising personal jurisdiction over Newton. See Walden, 571 U.S. at 284 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."). Newton's contact with Alabama in connection with Vanderlan's battery claim--which essentially consisted of flying over Alabama airspace at an indeterminate time--can therefore only be described as random, fortuitous, and attenuated, and as such, insufficient to establish personal jurisdiction over Newton. See Burger King, 471 U.S. at 475; World-Wide Volkswagen Corp., 444 U.S. at 295.

The same holds true for Vanderlan's defamation and tortious interference with business relations claims. Vanderlan contends that Newton made "false and defamatory statements" concerning him, that the statements were published to third parties, including a social media influencer with a large following, that the statements were made with actual malice or with reckless disregard for their truth or falsity, and that, as a result, he suffered harm to his reputation, loss of business relationships, and emotional distress. (Doc. 8 at 9-10). With respect to his claim for tortious interference with business relations, Vanderlan alleges that Newton was aware, or with reasonable diligence, should have been aware, of Vanderlan's "valid and enforceable business relationships and contracts with numerous medical care providers

guaranteeing him substantial remuneration for his medical services." (Doc. 8 at 10). He further alleges that Newton intentionally and unjustifiably interfered with these relationships by "disseminating false and malicious information" and that, as a result, he was damaged by Newton, "including loss of income and future business opportunities." (Id.).

It is undisputed that Newton submitted an online complaint to Delta Air Lines wherein she complained about her encounter with Vanderlan aboard Flight 409, but there is nothing about the online complaint that mentioned, let alone targeted, Alabama. Importantly, her online complaint took place *after* Flight 409 landed, not while in the air. Indeed, this case is in stark contrast to the facts in Wright-Phillips v. United Airlines, Inc., 2022 U.S. Dist. LEXIS 76427, at *10-11, 2022 WL 12379828, at *5 (D.N.J. Apr. 27, 2022), where, following an encounter on a flight from Los Angeles to Newark, a flight attendant reported that a passenger was a security concern and caused New Jersey Port Authority police officers to escort the plaintiff from the plane and detain her once the plane landed in New Jersey. In Wright-Phillips, the court found that while the conduct, including allegedly relaying false information about the encounter, occurred in the air, outside of New Jersey, the exercise of personal jurisdiction over the flight attendant was proper because her alleged conduct was central to the plaintiff's claims and was ultimately directed at the forum state

of New Jersey. 2022 U.S. Dist. LEXIS 76427, at *14-16, 2022 WL 12379828, at *6. According to the court, such "purposeful targeting of the forum state" underlay the plaintiff's tort claims--which included defamation--and was thus sufficient to permit an inference that the forum was the focal point of the alleged intentional torts.[5] Id.

By contrast, in this case, Vanderlan has failed to establish any connection between Newton's alleged actions and this forum.[6] Assuming that the flight in question flew over Alabama airspace,

---

[5] The court determined that no personal jurisdiction existed over the pilot because, assuming he relayed the information provided to him by the flight attendant, there was no indication that he did so with tortious intent, with knowledge of its falsity, or for the purpose of triggering the tortious act of having the plaintiff met by the police upon the plane's arrival in Newark. 2022 U.S. Dist. LEXIS 76427, at *14-16, 2022 WL 12379828, at *6.

[6] In his brief, Vanderlan contends that:

> The federal court system clearly possesses jurisdiction over all conduct occurring aboard a commercial aircraft once the doors are closed, and because Congress has effectively codified exclusive federal jurisdiction over criminal activity in flight and allows federal authorities to prosecute such offenses in any district along the aircraft's flight path, it follows that a passenger accused of unlawful conduct during a flight may likewise be subject to related civil litigation in any district through which the aircraft traveled.

(Doc. 21 at 21-22). Vanderlan has not cited any cases in support of this assertion, and the Court is not aware of any cases recognizing the existence of personal jurisdiction over a nonresident defendant based solely on the fact that aircraft on which the nonresident defendant was a passenger passed through the forum state's airspace.

the record is devoid of any facts suggesting that Newton should have reasonably anticipated being haled into court here. As noted, *supra,* Newton did not lodge a complaint while aboard Flight 409 nor are there any facts suggesting Newton undertook actions targeted at Alabama while aboard Flight 409. Vanderlan then contends that Newton sought to defame Vanderlan and interfere with his business relationships, and that harsh and vile comments were directed at him and his family, *after* McWhorter posted an "edited" video and Newton's account of her encounter with Vanderlan on Flight 409. However, there is nothing before the Court suggesting that in reaching out to McWhorter, Newton sought to somehow purposefully target Alabama. Nor are there any facts suggesting that McWhorter's posts or any of the comments to his posts were directed toward Alabama or an Alabama audience. Interestingly, while some of the comments relied upon by Vanderlan referenced Florida, Mississippi, Louisiana, and "medical boards" in general, none of them referenced the state of Alabama or any Alabama medical licensing board. (Doc. 8-8, Exh. "F."). Indeed, as noted in Walden, "the plaintiff cannot be the only link between the defendant and the forum." 571 U.S. at 285; see Cecil, 109 F.4th at 1365 ("[Plaintiff] needed to show that Alabama was the focal point of [nonresident defendant's] tweets, and [plaintiff] failed to do so. There is no evidence that the four tweets in question were directed at Alabama or that [defendant] intended to target an Alabama

audience as opposed to [defendant's] followers or a national audience generally."). Thus, Vanderlan has not demonstrated Newton has minimum contacts with Alabama, and his claims for battery, tortious interference with business relations, and defamation are due to be dismissed for lack of personal jurisdiction over Newton.[7]

**IV. JURISDICTIONAL DISCOVERY**

In lieu of formally moving for leave to serve jurisdictional discovery, embedded in Vanderlan's response is a request for jurisdictional discovery in the event Defendant's motion to dismiss is granted, together with proposed discovery requests attached as an exhibit. (Doc. 21 at 19, Doc. 22-4 at Exh. "D"). While the power to grant discovery generally is conferred to the sound discretion of the district court, the right to jurisdictional

[7] In his complaint and brief, Vanderlan asserts that over many months Newton, acting directly and through multiple law firms, engaged in continuous communications and negotiations with Plaintiff and his counsel in Alabama. (Doc. 8 at 7; Doc. 21 at 13, 15). Aside from these conclusory assertions, Vanderlan provides no specifics regarding the alleged communications with his counsel in Alabama, including who initiated the contact, the name and locations of the persons involved in the communications, and what was discussed. Thus, these alleged communications, which are offered without any context, provide no basis for the exercise of jurisdiction over Newton in Alabama. See generally Rubber Res., Ltd., LLP v. Press, 2009 U.S. Dist. LEXIS 5678, at *14-15, 2009 WL 211556, at *5 (M.D. Fla. Jan. 27, 2009) (nonresident defendants' taking of a single deposition in Florida did not constitute the requisite purposeful availment of the privilege of conducting activities in Florida); Steinhilber v. Lamoree, 825 F. Supp. 1003, 1006 (S.D. Fla. 1992) (Missouri defendant's single meeting with Florida plaintiffs in Florida to negotiate settlement of pending Missouri lawsuit did not constitute requisite minimum contacts with Florida for separate Florida action alleging abuse of process).

discovery is a qualified one available when a court's jurisdiction is genuinely in dispute. Lowery v. Ala. Power Co., 483 F.3d 1184, 1215-16 (11th Cir. 2007); Wolf v. Celebrity Cruises, Inc., 683 F. App'x 786, 792 (11th Cir. 2017) (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 730 (11th Cir. 1982)). If plaintiff's complaint fails to establish a prima facie case of personal jurisdiction, a district court abuses its discretion to permit jurisdictional discovery. Butler v. Sukhoi Co., 579 F.3d 1307, 1314 (11th Cir. 2009) ("Inasmuch as the complaint was insufficient as a matter of law to establish a [prima facie] case that the district court had jurisdiction, the district court abused its discretion in allowing the case to proceed and granting discovery on the jurisdictional issue." (citations omitted)); see also Diulus v. Am. Express Travel Related Servs. Co., 823 F. App'x 843, 849-50 (11th Cir. 2020) (affirming district court's denial of jurisdictional discovery where plaintiffs "did not meet their initial burden to allege a prima facie case of personal jurisdiction").

Moreover, jurisdictional discovery requests may not "serve as fishing expeditions, and, as such, are appropriate only when 'a party demonstrates that it can supplement its jurisdictional allegations through discovery.'" Wolf, 683 Fed. Appx. at 792 (citation omitted). Here, Vanderlan offers no basis for questioning Newton's jurisdictional assertions; thus, his proposed discovery requests amount to nothing more than a fishing expedition.

For instance, Newton's sworn Declaration provides she lives in Ohio and that she has never visited Alabama, yet Vanderlan's Interrogatory No. 10 instructs Newton to identify "any travel to the State of Alabama by you or your agents during the Relevant Period related to Plaintiff or the claims in this case." (Doc. 22-4, Exh. "D"). Vanderlan points to no facts which provide a reasonable basis for questioning Newton's jurisdictional assertions. Simply put, there is nothing before the Court suggesting that its jurisdiction is genuinely in dispute. Consequently, Vanderlan is not entitled to jurisdictional discovery to engage in a fishing expedition where he has failed to establish a prima facie case of personal jurisdiction.

## V. CONCLUSION

Based on the foregoing, the Court finds Vanderlan failed to establish a prima facie case for Alabama to exercise personal jurisdiction over Newton. The Court need not reach the additional dismissal grounds of either improper venue or failure to state a claim. See Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) (court should decide 12(b)(2) motion before 12(b)(6) motion); Madara, 916 F.2d at 1513-14, 1514 n.1 (dismissals for lack of personal jurisdiction are without prejudice). Accordingly, Newton's Motion to Dismiss (Doc. 14) is **GRANTED** and the Second Amended Complaint (Doc. 8) is **DISMISSED without**

**prejudice** for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2).

**ORDERED** this **30th** day of **March, 2026.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**